## CIRCUIT COURT OF CULPEPER COUNTY

ITT Teves America
Automotive et al.

v.

Culpeper County
Board of Supervisors

September 29, 1997

Case No. 96-L-366

BY JUDGE JOHN R. CULLEN

The petition in this proceeding filed pursuant to Virginia Code § 58.1-3984, *et seq.*, by ITT Teves America Automotive, ITT Teves America, and ITT Teves America-Asheville against the Board of Supervisors of Culpeper County, Virginia, seeks the correction of alleged erroneous assessments of certain personal property. Petitioners alleged that they are the owners of certain tangible personal property which is assessed and taxed by Culpeper County. Petitioners further alleged that certain personal property taxed under Account No. 249 and Account No. 20344 was erroneously assessed for tax years 1991, 1992, 1993, 1994, and 1995 because it was not located within the County as of the date of assessment. Petitioners ask the court to correct the assessments, order a refund of all erroneously assessed taxes, with interest, and grant other appropriate relief under §58.1-3987.

The Board filed a plea in bar and demurrer to the petition. The demurrer was later withdrawn by the Board and an *ore tenus* hearing was conducted on August 13, 1997, for the purpose of receiving evidence on the issues presented by the plea in bar. As a result of the hearing, the court found that the petitioners' claim for tax year 1991 was barred by the limitation period

contained in § 58.1-3984 and that their claim for interest was barred due to the lack of a County ordinance permitting an award of such interest. An Order was entered on September 2, 1997, formalizing the court's ruling from the bench on the two points. The court directed counsel to submit memorandums on the other issues raised by the Board's plea in bar: (1) that petitioners' claims are barred under § 58.1-3987 by their willful failure to provide the Commissioner of the Revenue with the necessary information as required by law; (2) that petitioners' claims are barred for failure to perfect an appeal from the decision of the Board or otherwise comply with the requirements of § 15.1-550, *et seq.*; and (3) that having voluntarily involved the provisions of § 15.1-550, *et seq.*, petitioners are estopped from denying the need to comply with the requirements of § 15.1-550, *et seq.* For the reasons hereinafter stated, the court finds in favor of the Board on the first issue and sustains the plea in bar as to that point; however, the court finds against the Board on the other two issues.

(1) The Board argues that any erroneous assessment was caused by the petitioners' willful failure to furnish the Commissioner of the Revenue with the necessary information on their tax returns as required by law, and therefore, the court should not order any such erroneous assessment corrected.

At the hearing on August 13, 1997, counsel for the Board called as witnesses James Shive, who served as Culpeper County Commissioner of the Revenue during the years in question, and also Billy E. Brown, the present Commissioner, who came into office on January 1, 1996.

Mr. Shive testified that in the time frame of 1989 to 1991, a dispute arose over alleged erroneous assessments of taxes paid by ITT Teves. Mr. Shive recalled that at the time the issues focused on the reporting of fully depreciated machinery and tools, the inaccurate reporting of intangible personal property as defined in § 58.1-1100, and the reporting of machinery and tools no longer located in Culpeper County. Mr. Shive also believed that there was an issue concerning the reporting of obsolete equipment and that there may have been the issue of reporting equipment that did not belong to ITT Teves. Mr. Shive did not recall the reporting of capitalized interest as being an issue in the earlier years. Mr. Shive testified that ITT Teves filed amended returns, and refunds were authorized in the $190,000.00 range, and that ITT Teves came up with a new fixed asset system in order to take care of the problems with the original returns. Mr. Shive noted that, after discussions with personnel employed by ITT Teves, "they took a very thorough interest in being able to classify their equipment for reporting purchases," and "about seeing the filing was done on time."

On cross-examination, Mr. Shive stated that to the best of his knowledge, the earlier problems were mistakes made by ITT and it was he who authorized the refund. When recalled by counsel for the Board, Mr. Shive testified that during the time period in question, the greatest probability for an erroneous tax assessment would be erroneous reporting on the part of the taxpayer.

Mr. Brown, the present Commissioner, testified in part that the petitioners were required by state law and county code to provide the Commissioner with a true and accurate list of their tangible personal property and value by May 1st of each year and that, for tax years 1991 through 1995, they filed their tax returns. For this period of time, the returns reported taxable personal property located at the plant and the value of that property. Mr. Brown testified that for each of the years the petitioners' personal property taxes were based upon the information provided in those tax returns.

The petitioners called Hagazi Kebede, who has served as ITT's financial manager since April of 1996. Mr. Kebede testified that he had reviewed the tax returns for the years in question and determined that they were filed by employees adding to or subtracting from the prior year's return. Mr. Kebede indicated that there was a large turnover of employees during this period of time. The information for the return was supplied by a computer-generated report known as a "net asset book value report," and Mr. Kebede testified that "many times people add and subtract rather than analyze the listing." In this manner, employees knew they were not underreporting or failing to include something on the return.

On cross-examination, Mr. Kebede testified that he did not really know what ITT did or did not do to produce accurate information but, in his opinion, quite often they overreported their taxes. Mr. Kebede could not testify as to what ITT intended or understood when they filed the tax returns. Since coming to ITT, Mr. Kebede has put procedures and controls in place to make sure the accountants know whether property is taxable or nontaxable. These procedures were not in place prior to Mr. Kebede's arrival in April of 1996.

The evidence before the court shows that in years prior to 1991, the petitioners filed inaccurate returns on their personal property under circumstances similar to those involved in their present request to correct erroneous assessments. At that time, the petitioners undertook the employment of an accounting firm and with a new reporting system proceeded to file amended returns for the years in question which resulted in a refund of approximately $190,000.00. Following that recovery from the county, it appears that petitioners returned to their prior method of reporting

their annual return of personal property to the Commissioner, because no procedure was in place as late as April 1996 to properly account for property not to be included on the return.

The testimony of Mr. Kebede, financial manager for the petitioners, shows that the personnel responsible for filing the returns undertook to include all personal property shown on the "net asset book value report" using the prior year's return as a guide. Some addition and subtraction took place as to the report, but the practice seemed to be to report everything to the Commissioner on the annual return without analyzing the information. Apparently, this practice of overreporting had resulted in the erroneous assessment and refund for the years prior to 1991. No reason was offered as to why the proper accounting procedures and controls were not put into place prior to Mr. Kebede's employment in April of 1996, other than there was a high turnover of personnel responsible for preparing the returns.

Based upon a consideration of all the evidence adduced at the hearing on the plea in bar and after considering the memorandum of counsel and authority cited therein, the court finds that any assessment of personal property determined to be erroneous for the years in question was the result of petitioners' willful failure to furnish the Commissioner with the necessary information on their annual returns for those years as required by law. It is clear that petitioners were aware of an accounting problem in their company because of the erroneous filing and corrections made to the returns prior to 1991. The need to file returns with correct information was brought to the petitioners' attention at that time by the Commissioner; however, the petitioners continued to overreport property on their returns and did not put the proper procedure in place to correct the reporting until April of 1996. The overreporting of personal property does not appear to be due to ignorance on the part of the petitioners since a similar situation existed prior to 1991 but was rather an intentional and deliberate course of conduct undertaken by petitioners to overreport their personal property without an adequate accounting procedure to determine which property should be excluded from the return. The necessary information needed by the Commissioner to make the appropriate assessment was a correct reporting of petitioners' personal property which they willfully failed to provide.

(2 & 3) The Board argues that the petitioners are barred from proceeding under § 58.1-3984 because they elected to present a monetary claim for a refund of taxes for the years in question to the Board under § 15.1-550 and failed to perfect a timely appeal to the Board's adverse decision under § 15.1-552.

By letter dated November 1, 1996, (Plaintiff's Exhibit 1) from Mr. Downey, counsel for petitioners, to Mr. Brown, Commissioner of the Revenue, and Mr. McRoberts, County Attorney, the County was put on notice that petitioners were seeking correction of an erroneous assessment of personal property taxes and claiming a tax refund for the years in question. The first sentence states, "This letter constitutes the claim by the above-referenced entities (the "Petitioners") under §§ 15.1-550, 58.1-3980, and 58.1-3981 of the Code of Virginia for correction of erroneous assessment of personal property taxes."

Under a section of the letter entitled "2. *THE CLAIM*," Mr. Downey relates that "Petitioners seek administrative relief from the erroneous assessment of personal property for tax years 1991, 1992, 1993, 1994, and 1995 pursuant to §§ 58.1-3980 and 58.1-3981 of the Virginia Code."

Upon receipt of the letter by the County Attorney, the County Administrator, Steven B. Miner, informed Mr. Downey by letter dated November 26, 1996, (Defendant's Exhibit # 4) that the Board would consider the claim for a tax refund at its December 3rd meeting. The minutes of the Board of Supervisors introduced as Joint Exhibit # 1 shows that this agenda item was tabled at the December meeting for thirty days to allow time for the staff and Commissioner of the Revenue to review additional evidence. At the January 7, 1997, Board meeting, the tax refund item was tabled until the next meeting to allow ITT an opportunity to provide additional documentation, and, on January 14th, the Board voted to deny the claim for a tax refund.

Mr. Miner testified that he treated the November 1st letter as a claim under Virginia Code § 15.1-550 because of the first sentence in the letter and the use of the word "claim." Consequently, Mr. Miner put the item on the agenda for the December Board meeting. Mr. Miner testified the Board denied the claim under § 15.1-550, and the County never received a notice of appeal of the Board's action in the matter.

On cross-examination, Mr. Miner testified that ITT did not ask for the matter to be placed on the Board's agenda but that it was treated as a claim and handled in the normal manner. Mr. Miner further testified that for a taxpayer to be entitled to any monetary relief, there would have to be a reduction of the tax assessment itself. Mr. Miner testified that the Board can grant a refund of taxes "after certification by the Commissioner … and, I think, the Treasurer — indicating that it has been paid, indicating that it's due to the taxpayer."

Mr. Brown testified that he did not proceed to take any action based on the November 1st letter because he considered it a claim against the Board of

Supervisors and did not think that the code allowed him to discuss these issues with the attorney for the taxpayer while the claim was pending. At the time the matter was being considered by the Board, the present suit had been filed and was pending before the court.

The Board argued that the taxpayers brought a claim for a tax refund under § 15.1-550, that it was denied by the Board, not appealed by petitioners as required under §§ 15.1-552 and 15.1-553, and having elected to pursue this remedy to a conclusion, the petitioners are barred from proceeding with the remedy allowed under § 58.1-3984, *et seq.*

A close reading of § 58.1-3980, *et seq.*, in conjunction with the memorandums and authorities cited therein, leads this court to the conclusion that the Board of Supervisors does not have the authority to correct assessments made by the Commissioner of the Revenue. As such, a refund can only be authorized and directed to be paid by the Treasurer after the Commissioner corrects the assessment and certifies the fact of the erroneous assessment to the governing body of the county. In the case before the court, the Commissioner never acted on the petitioners' request and therefore did not file the required certificate with the Board to authorize such a refund.

The Supreme Court of Virginia in the case of *Dominion Chevrolet Co. v. County of Henrico*, 217 Va. 243 (1976), noted that the General Assembly made explicit provision for the correction of erroneous assessments and refund of taxes by its enactment of the present statutory provisions in Article 5 of Chapter 39 of Title 58.1 of the Code of Virginia. The Court noted that "in the special area of taxation the remedy afforded the aggrieved taxpayer is that provided by § 58-1145 [now 58.1-3984], *et seq." Id.* at 247.

In addition, Culpeper County has by its own ordinance provided that "The Commissioner of Revenue shall certify to the Treasurer, who shall refund any local taxes or class of taxes erroneously paid to the taxpayers of Culpeper County, in the manner prescribed by § 58.1-3990 of the Code of Virginia, 1950, as may be amended from time to time." Culpeper County Code, § 12-5. Virginia Code § 58.1-3990 provides, in part, that a successor in office to the commissioner of the revenue who made the original erroneous assessment (the situation in this suit) must make a diligent investigation to determine that the original assessment was erroneously made and certify the same to the treasurer and local governing body. As stated above, Mr. Brown did not undertake this investigation before the Board proceeded to act.

The claim/request set forth in the petitioners' letter of November 1, 1996, to the Commissioner and County Attorney was plainly a request for relief from erroneous assessment of personal property taxes under §§ 58.1-3980 and

58.1-3981 and not a monetary claim addressed to the Board under § 15.1-550. That the Board proceeded to place the claim/request on the agenda and deny the same did not constitute an election of remedies by the taxpayers that would bar their proceeding before the court in the present suit.

As a result of the court's ruling, Mr. McRoberts should prepare an order sustaining the plea in bar as to the first issue and overruling the same as to the remaining issues before the court. As a result of the court's ruling, the November 19th date reserved for this case will be removed from the court's docket.